---

### In re WYLY et al.

(District Court, N. D. Texas.  June 7, 1902.)

#### No. 261.

1. BANKRUPTCY—RIGHT TO PROVE CLAIM—INDORSEE OF NEGOTIABLE PAPER.
    The bankruptcy act does not change the rights of indorsees of negotiable instruments, and a bank which, in the ordinary course of business and in good faith, discounted for a customer a note of a third party, indorsed by the customer, may prove the same as a debt against the estate of the maker on his subsequent bankruptcy, notwithstanding the fact that the payee and indorser had received preferences from the bankrupt which he would have been required to surrender before he could have proved the note.

In Bankruptcy.  On certificate from referee.

R. W. Flournoy, for State Nat. Bank.

Davis & Cocke, for trustee.

MEEK, District Judge.  The referee certifies that the firm of Wyly & Wyly were adjudged involuntary bankrupts on a petition filed by creditors on the 14th day of November, 1901; that the State National Bank of Ft. Worth filed and had allowed its proof of debt based on a

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 498.

promissory note for $563.60. The record shows this note to have been executed on the 22d day of October, 1901, by Wyly & Wyly, and delivered to the Carter-Battle Grocery Company, in whose favor it was made. On October 26, 1901, the grocery company transferred this note by indorsement to the bank. The trustee of the bankruptcy estate filed a contest of the claim of the bank on the following grounds: That the claim was really that of the Carter-Battle Grocery Company, and the bank was acting for and in its behalf; that the grocery company had received certain preferences which it should be required to return before the allowance of this claim; and that, in any event, the bank should be required to look first to the grocery company for its money before being permitted to file its claim against the bankruptcy estate.

The State National Bank answered the contest, and alleged that the promissory note was acquired by it before the filing of the petition in bankruptcy against Wyly & Wyly, by purchase from the grocery company; that the bank paid a valuable consideration in cash for the note, and that the same was regularly indorsed and transferred to it by the grocery company, whereby it became the owner thereof; that it had no notice or information of any rights or claims on the part of the makers thereof against the payee, or of their relations and dealings with the payee; that it took the note in good faith by purchase as aforesaid, for a valuable consideration, before maturity, in the ordinary course of its business as a banking corporation discounting commercial paper; and it asks that this claim against the bankrupt estate of Wyly & Wyly be permitted to stand according to the proof already made. Proof was adduced before the referee on the issue thus made, and he permitted the claim of the bank to stand as proved, and the trustee asked for this certificate.

It is admitted in the record that the grocery company, the indorser of the note, had received large payments from Wyly & Wyly, bankrupts, during their insolvency, and in event this note had remained the property of the grocery company it could not have been proved up by it without having first made a surrender of the preferential payments received largely in excess of the face of the note. The contention of the trustee to the effect that the note was in fact the property of the grocery company, and that the bank was simply filing it in its name to aid the grocery company in rendering it possible for the latter to collect the note without a surrender of preferential payments received by it, is not supported by any evidence whatever. On the other hand, it is shown that the note was indorsed by the grocery company, and transferred to the bank before maturity, and in the due course of the bank's business in discounting paper for its customers. The evidence fails to disclose that the bank had knowledge of the insolvency of Wyly & Wyly or of the relations existing between Wyly & Wyly and the grocery company. It is true the bank has since the insolvency of Wyly & Wyly practically agreed to first look to the bankruptcy court for the payment of the note, and to hold the grocery company only for that portion which is not paid out of the dividends arising from the bankruptcy estate. This fact cannot, without other and additional circumstances, which are wholly lacking, support a finding of collusion

and fraud as existing between the grocery company and the bank with relation to the transfer of this negotiable instrument.

The trustee, failing to show that the note was the property of the grocery company, seeks to enforce against the claim of the bank the equities which would have existed by virtue of the provisions of the bankruptcy act in favor of the estate of the bankrupts against the grocery company, the original payee of the note. The rights of a purchaser or holder of a negotiable instrument who has taken it bona fide, for a valuable consideration, in the ordinary course of business, before due, without notice, are not affected by the equities existing between the antecedent parties. This proposition is too well settled to need the citation of authorities for its support. The bankruptcy act does not by its terms alter the rights of the indorsee of negotiable instruments, and so they exist just as before its enactment. In this case to permit the equities that would have obtained against the grocery company to be interposed against the bank would be to radically depart from those rules which have long controlled the interchange of commercial paper. It would be a departure which could only be justified by plain provisions of law. That the grocery company, by a timely indorsement and discounting of this paper to the bank, has been enabled to secure its whole debt to the discomfiture of the other creditors, and to possibly successfully evade the effect of the bankruptcy act relating to preferences, does not warrant a conclusion contrary to all authority.

The wisdom of vouchsafing to the indorsee of negotiable paper the high degree of security now almost uniformly observed by the courts is made manifest by tracing the different rulings on the subject, and their effect upon credit and commerce. While it is right to scrutinize carefully every circumstance in a transaction of this character for evidence of mala fides, yet a judge should not be led by considerations of expediency to leave the beaten tracks of law and precedent.

The ruling of the referee in permitting the claim to stand is affirmed.