---

## In re LEVI.

### (District Court, W. D. New York. January 5, 1903.)

1. BANKRUPTCY—PREFERENCE—PROOF OF CLAIM—NOTE—BONA FIDE PURCHASER.

A note, discounted by a bank without knowledge of the insolvency of the maker and in due course of business, by crediting the payee with the amount of the discount, which note in the hands of the payee and indorser would not be provable in bankruptcy against the maker's estate until certain preferences received were surrendered, is provable by the bank as a bona fide holder.

On Review of Ruling of Referee.

Wellington, Jones & Millard, for claimant.
Adler & Adler, for trustee.

HAZEL, District Judge. This is a review of a decision of Van Voorhis, referee. The question under consideration is solely whether the State Bank of Chicago has a provable claim against the bankrupt estate. The claim arises by virtue of a promissory note given by the bankrupt to Sleph & Jaffe, a firm in Chicago, and discounted by the claimant bank in due course of business. Sleph & Jaffe had received payments from the bankrupt which are admittedly preferences. The note in their hands, as conceded by both parties and the referee, would not be provable until such preferences were surrendered. The referee holds that the bank, by virtue of discounting this note and placing the proceeds to the credit of Sleph & Jaffe, does not become such a bona fide holder of the note as to permit its filing a claim against the estate which would be free from the taint of preference received by Sleph & Jaffe. The admitted facts show that the bank discounted the note without knowledge of the insolvency of the bankrupt. The evidence, as far as material, was by stipulation of the parties submitted in the form of an affidavit. The referee, therefore, had no greater opportunity to judge of the credibility of the evidence

than has this court. The evidence of the cashier of the bank discloses that the note was purchased by the bank in the ordinary course of business, and that the bank paid to Sleph & Jaffe the sum of $295.30 therefor. The manner of payment was in the form of a credit to Sleph & Jaffe in their banking account. The note not having been paid by Sleph & Jaffe on maturity, the bank is endeavoring to enforce the claim in its own behalf, and not as agent of Sleph & Jaffe. The referee holds that the presentment of the claim by the bank is but a subterfuge to enable the payee of the note, Sleph & Jaffe, the indorser to the bank, to secure a preference. This holding is based on the theory that, inasmuch as the bank did not actually pay over the money at the time credit was given to the payee, value was not given for it. This contention cannot be maintained. The facts in this case are analogous to those disclosed by In re Wyly (D. C.) 116 Fed. 38, 8 Am. Bankr. Rep. 604. In that case the court said of the bank filing a claim transferred to it by a grocery company under the same circumstances as in the case at bar:

"It is true the bank has, since the insolvency of the bankrupts, practically agreed to first look to the bankruptcy court for the payment of the note, and to hold the grocery company only for that portion which is not paid out of the dividends arising from the bankruptcy estate. * * * The trustee, failing to show that the note was the property of the grocery company, seeks to enforce against the claim of the bank equities which would have existed by virtue of the provisions of the bankruptcy court act in favor of the estate of the bankrupts against the grocery company, the original payee of the note."

The court in that opinion well said:

"The wisdom of vouchsafing to the indorsee of negotiable paper the high degree of security now almost uniformly observed by the courts is made manifest by tracing the different rulings on the subject, and their effect upon credit and commerce. While it is right to scrutinize carefully every circumstance in a transaction of this character for evidence of mala fides, a judge should not be led by considerations of expediency to leave the beaten tracks of law and precedent."

It would seem that the doctrine of the case cited would be the safer rule to apply to a case like that under consideration. Transactions similar to that under review are of constant occurrence, and their stability should be sustained if consistent with the rules of law. The ruling of the referee is reversed, and the claim allowed.